UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL BARRETT,

                              Petitioner,          04-CV-848
                                                   (95-CR-232)

              v.


UNITED STATES OF AMERICA,

                      Respondent.
_____

THOMAS J. McAVOY,
Senior United States District Judge


### DECISION & ORDER

## I.  INTRODUCTION

      Michael Barrett (hereinafter "Petitioner") has filed the instant motion pursuant to 28 U.S.C.

§2255 challenging his criminal conviction and sentence.  For the reasons that follow, the motion is

denied and his petition dismissed.

## II.  BACKGROUND

      On June 26, 1995, Petitioner and approximately forty other people were indicted for various

narcotics, weapons, and conspiracy charges arising out of their participation in what has been

referred to as the Joyner Organization. See United States v. Joyner, 201 F.3d 61, 66-68 (2d Cir.

2000)("Joyner I").[1] Petitioner was charged with conspiracy to distribute cocaine, in violation of 21

_____

      [1]  The facts presented in the trials before the Court established that the Joyner Organization (hereinafter
                                                                              (continued...)

1

U.S.C. § 846, and engaging in a continued criminal enterprise ("CCE"), in violation of 21 U.S.C. §

848. Petitioner was tried with six other co-defendants in an eight week jury trial from April 2, 1996

to June 4, 1996.  At the conclusion of the first trial, the jury was unable to reach a verdict as to

Barrett or co-defendant Sweat. A retrial was then held from November 25, 1996 until December 12,

1996, resulting in Petitioner's conviction on all counts. On appeal, the Second Circuit Court of

Appeals affirmed Petitioner's CCE conviction but vacated the drug conspiracy charge. See id. at 67

(citing Rutledge v. United States, 517 U.S. 292 (1996) in which the Supreme Court held that a drug

conspiracy is a lesser included offense of a CCE.).  Additional appellate arguments were considered

and rejected in a separate opinion that denied defendants' petition for reargument before the Second

Circuit. See United States v. Joyner, 313 F.3d 40, 46-48 (2d Cir. 2002)("Joyner II"). Petitioner's

petition for a writ of certiorari to the United States Supreme Court was denied on February 23,

---

[1](...continued)

"Organization") was initially formed in 1989 by Archie Joyner and sold narcotics at several bars and strip clubs in Binghamton, New York. Joyner, the ringleader and subsequently-turned-government witness, would pay people within the organization to mule cocaine from his contacts in New York City to the Binghamton area, and the cocaine would then be sold by other associates within the organization at various bars. The organization initially began selling drugs at several local bars in Binghamton including the Sail Inn, Begies and Kennedy's Corners. As business grew, however, so did the territory the organization sought to cover, and soon they were selling drugs at other bars in Binghamton including Amp, Sheions and Choices.

Petitioner did not become an active member of the organization until February 1994. Prior to this time, Petitioner  was operating another gang in the Binghamton area that also sold drugs within the same territory as the Organization. Frequently, the Organization and Barrett's crew would clash over drug customers and territory, which in turn upset "business" by attracting additional police attention. In an effort to relieve some of the tension between the various groups and improve profits, Petitioner agreed to join the Organization in or about February 1994. Soon thereafter, in April 1994, Petitioner and his right-hand man, co-defendant Michael Sweat, began selling drugs in Choices, one of Joyner's bars. Sweat, and another government witness, Shatima Turner, were the primary employees of Petitioner during his tenure within the Organization. They, among others, would sell cocaine, and in some instances also transport shipments from New York City to Binghamton.

In June 1994, the police arrested Joyner during a raid at Sheions. After he was taken into custody, then-girlfriend Tracy Smith took over the Organization's drug operations and subsequent business with Petitioner. Petitioner continued to sell drugs at Choices through the summer of 1994, however in August he had a falling out with Smith and, shortly thereafter, he and his crew left the Organization.

2004. <u>Barrett v. U.S.</u>, 540 U.S. 1201 (2004).

The instant motion rests primarily on claims that his counsel provided constitutionally ineffective assistance under the Sixth Amendment. According to Petitioner, counsel was constitutionally deficient by failing to prepare and present a defense during the second trial; failing to call key witnesses; failing to expose the lies and bias of one of the prosecution's witnesses; calling witnesses who supposedly hurt the defense; failing to move to dismiss the indictment; failing to request a proper instruction on the CCE count; and failing to request a charge allowing the jury to convict on either the CCE count or the lesser included conspiracy count. Finally, Petitioner asserts that his sentence is unconstitutional in light of the holding of <u>United States v. Booker</u>, --- U.S. ----, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

## III.  DISCUSSION

### A.  Section 2255 Standard

A § 2255 challenge is limited to claims that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.  Thus, relief pursuant to section 2255 is available only "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in [a] complete miscarriage of justice.'" <u>Graziano v. United States</u>, 83 F.3d 587, 590 (2d Cir. 1996)(quoting <u>United States v. Bokun</u>, 73 F.3d 8, 12 (2d Cir. 1995))(internal quotations omitted).  In a Section 2255 proceeding, a petitioner bears the burden of proof by a preponderance of the evidence. <u>See</u> <u>Triana v. United States</u>, 205 F.3d 36, 40 (2d Cir. 2000).

## B.  Ineffective Assistance of Counsel Standard

In order to state a cognizable Sixth Amendment claim for ineffective assistance of counsel, Petitioner must prove: "(1) counsel's conduct 'fell below an objective standard of reasonableness,' and (2) this incompetence caused prejudice to ...defendant."  United States v. Guevara, 277 F.3d 111, 127 (2d Cir. 2001)(quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)). In analyzing the first prong of Strickland, the Court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  Given this presumption, "the burden rests on the accused to demonstrate a constitutional violation." United States v. Cronic, 466 U.S. 648, 658 (1984). The standard is one of objective reasonableness, and "[t]he first prong of the Strickland test is not satisfied merely by showing that counsel employed poor strategy or made a wrong decision. Instead, it must be shown that counsel 'made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment.'" Jackson v. Moscicki, 2000 WL 511642, at * 7 (S.D.N.Y. April 27, 2000)(quoting Strickland, 466 U.S. at 687); see Kimmelman v. Morrison, 477 U.S. 365, 381 (1985)(Petitioner bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.")(citing Strickland, 466 U.S. at 688-89).   Furthermore, the Court must evaluate counsel's performance from his perspective at the time of the alleged errors and in the same circumstances. Garcia v. United States, 15 F. Supp.2d 367, 379 (S.D.N.Y. 1998)(citing Strickland, 466 U.S. at 689).

To satisfy the second prong of Strickland, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to

undermine confidence in the outcome." Id. at 694.

### C. Failure to Prepare a Defense

Petitioner first argues that his attorney was constitutionally deficient because he failed to prepare and present a defense in the second trial. According to Petitioner, his counsel opted not to prepare or put forth a defense in the second trial because of a belief that the Court would grant a motion to dismiss prior to trial, or in the alternative, because he believed that, based on the hung jury verdict in the first trial, the jury would acquit in the second trial. Petitioner fails to mention, however, that after his first trial he sought to dismiss counsel and proceed *pro se*. During his quest to have counsel removed, Petitioner wrote several letters to this Court, his counsel, and the New York State Committee on Professional Standards alleging ineffective assistance of counsel in the first trial and articulating his desire to proceed *pro se*. This desire came to fruition when counsel was relegated to a "stand-by" role in the second trial and Petitioner was allowed to proceed *pro se*. Petitioner picked his own jury and delivered his own opening statement. He then decided that he no longer wished to proceed *pro se,* and counsel was once again appointed to actively represent Petitioner. Of course, counsel had to do so in light of the theory of the case presented by Petitioner during jury selection and in his opening statement.

Having presided over the second trial, the Court finds no merit to Petitioner's contention that his attorney failed to present a defense in the second trial. See United States v. Sapia, 2002 WL 620483, at *4 (S.D.N.Y. April 18, 2002).[2]  Counsel cross-examined government witnesses, see

---

[2]  In deciding a Section 2255 petition without a hearing, "a district court may rely on its own familiarity with the case and deny the 2255 motion where the motion lacks 'meritorious allegations that can be established by competent evidence.'" United States v. Sapia, 2002 WL 620483 at *4 (quoting Stokes v. United States, 2001 WL 29997, at *2 (S.D.N.Y. Jan. 9, 2001)).

Joyner I, 201 F.3d at 82 ("Barrett fully cross-examined Turner about her allegedly perjurious statements...."), called witnesses in Petitioner's behalf, made pertinent legal objections, and proffered legal arguments on Petitioner's behalf. While hindsight might indicate that Counsel should have done something differently, Petitioner fails to overcome the presumption of his counsel's competence and that counsel's decisions constituted strategic choices based upon counsel's familiarity with the government's proof and the defense proffered by Petitioner in his opening statement. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)(Petitioner offers little more than "hindsight to second-guess his [counsel's] strategy choices."). Petitioner's cursory contention that trial counsel did not do enough between the first and second trial does not overcome the "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Cox v. Donnelly, 387 F.3d 193, 198 (2d Cir. 2004)(quoting Strickland, 466 U.S. at 689); see Sirotnikov v. United States, 1998 WL 770557, at *4 (S.D.N.Y. Nov. 2, 1998)("Petitioner's naked assertion that his trial counsel 'failed to adequately perform pretrial research and investigation,' does not establish ineffective assistance of counsel."). Petitioner has not surmounted the "presumption that counsel's conduct 'might be considered sound trial strategy.'" Cox, 387 F.3d at 198 (quoting Strickland, 466 U.S. at 689). Accordingly, Petitioner's claim fails under the first prong of Strickland. See Parnes v. United States, 1995 WL 758805, at *3 (S.D.N.Y. Dec. 21, 1995)("[V]ague allegations do not permit the Court to conclude that the alleged errors of Petitioner's counsel fell below 'prevailing professional norms'.... Accordingly, the Court rejects Petitioner's claim that he received ineffective assistance of counsel."); Matura v. United States, 875 F. Supp. 235, 237-38 (S.D.N.Y. 1995)(mere conclusory allegations that counsel was ineffective fails "to establish that his counsel's performance was deficient [and] .... fails to overcome the presumption

[under Strickland] that counsel acted reasonably....").

Further, "Petitioner's conclusory allegations that counsel evinced 'a general lack of preparation' do not demonstrate that absent the alleged errors, the outcome of the trial would have been different. Petitioner has not elaborated on how counsel's alleged general lack of preparation prejudiced the outcome of his trial. Accordingly, such purported lack of preparation cannot be deemed ineffective assistance of counsel." Slevin v. United States, 1999 WL 549010 at *5 (S.D.N.Y. July 28, 1999), aff'd, 234 F.3d 1263 (2d Cir. 2000); see also Vasquez v. United States, 1997 WL 148812, at *1-2 (S.D.N.Y. Mar. 28, 1997)("[P]etitioner's allegations with regard to alleged counsel errors in pre-trial preparation and investigation and trial advocacy are 'vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source,' and, accordingly, ... '[t]he vague and unsubstantiated nature of the claims' defeated petitioner's claim of ineffective assistance of counsel...."); Hartley v. Senkowski, 1992 WL 58766, at *2 (E.D.N.Y. Mar. 18, 1992)("In light of this demanding [Strickland] standard, petitioner's vague and conclusory allegations that counsel did not prepare for trial or object to errors carry very little weight.").  The claim premised upon the general failure of counsel to prepare and present a defense is dismissed.

### D.  Failure to Call Certain Witnesses

Petitioner also claims that counsel was constitutionally ineffective because he failed to interview and call several witnesses who would have purportedly provided exculpatory testimony. In this regard, Petitioner alleges that counsel failed to find, and call, numerous witnesses who allegedly would have rebutted some of the government's allegations on the various elements of the CCE count, or would have impeached one of the government's witnesses - Shatima Turner.

"Habeas claims based on complaints of uncalled witnesses are not favored, because the

presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified [to] are largely speculative.'" Lou v. Mantello, 2001 WL 1152817, at *10 (E.D.N.Y. Sept. 25, 2001)(interior quotation and citation omitted).  Much of what these witnesses supposedly would have testified to is based upon nothing more than pure speculation by Petitioner. Such speculation is insufficient on this motion. See United States v. Vargas, 920 F.2d 167, 170 (2d Cir. 1990)(petitioner's affidavit making allegations in a "conclusory fashion" failed to demonstrate that counsel's decision not to call a witness was unreasonable), cert. denied, 502 U.S. 826, 112 S.Ct. 93 (1991); Muhammad v. Bennett, 1998 WL 214884, at *1 (S.D.N.Y. Apr. 29, 1998)("petitioner's speculative claim about the testimony of an uncalled witness" is insufficient to show ineffective assistance of trial counsel); Angel v. Garvin, 2001 WL 327150, at *8 (S.D.N.Y. April 3, 2001)(recognizing that a habeas petition may be denied when the allegations are speculative or conclusory).

Other potential witnesses, however, have supplied affidavits as to what they purportedly would have testified to if called.  In this regard, Petitioner's wife, Stephanie Barrett, would have testified that she received a substantial inheritance when she turned 18, and that she used this money to open a restaurant and recording studio for her husband, and to pay for her and husband's vacations. See S. Barrett Aff. Petitioner asserts that this testimony would have rebutted the government's proof that Petitioner received substantial income from his drug activities. Ms. Barrett would have also testified that on "several occasions" she was in "Choices" juice bar that Petitioner rented from Joyner and she "did not see any illegal activity." Id. Stephen Brown and Anthony Danes would have testified that, although they both engaged in illegal drug activities, they acted independently of Petitioner and were not organized or managed by him. See Brown Aff.; Danes Aff.

Kevin Rowe, "a/k/a 'Kevro,'" would have testified that he never saw Petitioner "possess or distribute any drugs" and "never heard Mr. Barrett ordering or instructing anyone to possess, distribute or deliver any drugs." Rowe Aff. ¶ 3.  Vera Jeffery would have testified that she "never allowed" Petitioner "to use [her] apartment as a place to cut and store his drugs."  Jeffery Aff. ¶ 3.

Assuming these witnesses could have been located at the time, Petitioner's claim nevertheless fails under both first prongs of the Strickland test. An attorney's decision "whether to call specific witnesses--even ones that might offer exculpatory evidence--is ordinarily not viewed as a lapse in professional representation." United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000); see also United States v. Schmidt, 105 F.3d 82, 83 (2d Cir. 1997)(The decision of whether or not to call a particular witness is a matter of trial strategy which the courts will generally not second guess.); United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.)("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial."), cert denied 484 U.S. 958 (1987); United States v. Smith, 198 F.3d 377, 386 (2d Cir. 1999).  There could have been any number of strategic reasons for not calling these witnesses, including, but not limited to, that the witnesses might have invoked their Fifth Amendment rights and refused to testify, or, the witnesses might have offered information that was more damaging than helpful to the defense. For instance, both Brown and Danes admitted selling drugs but merely assert that they did not do so for Petitioner. Others, although not admitting to drug sales in their affidavits, were believed to be criminally involved in the drug conspiracy occurring at the juice bar Petitioner managed. See Petitioner's Traverse, dkt. # 17, p. 3 ("Each of these [people who supplied] affidavits ("C"-"F") were named co-conspirators who, as the government claimed[,] were supervised by Michael Barrett and sold drugs

9

at Choices under his agreement with Joyner.").[3]  An attorney representing a defendant charged with

both CCE and conspiracy drug counts might well have thought it imprudent to call witnesses, some

of whom were admitted drug dealers, especially if their sales occurred in the establishment that

Petitioner rented from Joyner and which the government contended was used as a cover for illegal

transactions.

Similarly, the purported testimony of Petitioner's wife, Brown, and Jeffery would not have

exculpated Petitioner.  It merely would have amounted to testimony that the witnesses were not

aware of Petitioner's activities in selling drugs or managing others in the sale of drugs, but it would

not have ruled out the possibility that Petitioner engaged in such activities without these witnesses

knowing about it. Counsel might well have concluded that the risk of putting these witnesses on the

stand outweighed any minimal benefit that they could have provided.

As to the potential to impeach Shatima Turner, the record reflects that counsel did attack

Turner's credibility on another basis during the trial, see Joyner I, 201 F.3d at 82,[4] and the concerns

_____

[3] The referenced affidavits were from Brown (ex. C); Rowe (ex. D); Danes (ex. E); and Jeffery (Ex. F).

[4] In Joyner I, the Circuit wrote:

Barrett and Sweat next argue that it must have been evident to the government that Turner perjured
herself during the second trial.  We disagree.  Turner's testimony at the first trial that she did not see
Barrett with a gun after Gillespie came to Choice's was not inconsistent with her testimony at the
retrial that Barrett had a gun on the date that Gillespie came to the bar.  In any event, Turner
explained on cross-examination that her failure at the first trial to mention that Barrett had a gun was
due to her nervousness at the first trial--a not implausible explanation. Even if her testimony was
perjurious, however, cross-examination and jury instructions regarding witness credibility will
normally purge the taint of false testimony. See United States v. Blair, 958 F.2d 26, 29 (2d Cir. 1992).
Here, Barrett fully cross-examined Turner about her allegedly perjurious statements, and the district
court charged the jury on witness credibility, prior inconsistent statements, and on the jury's right to
disregard false testimony. Her testimony did not, therefore, taint the trial.

201 F.3d at 82.

10

of opening a Pandora's Box by putting other drug dealers on the stand to attack her on other grounds seems to be a sound strategic decision under the circumstances, especially in light of the strength of the government's case (discussed *infra*). Indeed, the government's case was built around testimony from Joyner himself. See Joyner I, 201 F.3d at 65 (referring to Joyner as "the government's key witness").  As to the potential benefit of Petitioner's wife testifying to legitimate sources of family finances, counsel called non-family members to demonstrate the same point. See Discussion, part III(F), *infra*. Certainly, it was a sound strategic decision to try to establish this from seemingly unbiased witnesses as opposed to putting the ostensibly-biased wife on the stand, risking waiving any marital privilege, and getting harmful testimony.

Further, and assuming that the witnesses would have testified as they now assert, see Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir. 1990)(holding that to prove prejudice from counsel's failure to call witnesses, a petitioner must show not only that the testimony would have been favorable, but also that the witnesses would have voluntarily come forth to testify), Petitioner cannot demonstrate that *but for* the absence of their testimony, the result of the trial would have been different. Strickland, 466 U.S. at 694; see Slevin v. United States, 1999 WL 549010, at *5 (S.D.N.Y. 1999)(a habeas petitioner must show how counsel's failures prejudiced the outcome of the trial), aff'd, 234 F.3d 1263 (2d Cir. 2000). While these witnesses might have supported Petitioner's defense in some part, or impeached Shatima Turner's testimony to some degree, there was a plethora of evidence that supported his guilt. Over twenty witnesses were called on the government's case-in-chief, including Joyner.[5]  To now assume that the jury would have disregarded

---

[5]  The government called a total of twenty-three witnesses during petitioner's second trial. In the order they appeared, the government called: (1) Edwin Ramos; (2) William Little; (3) Archie Joyner; (4) Clarence D. Brown; (6)

(continued...)

all of this testimony and unequivocally believed Petitioner's proffered witnesses is wholly speculative and unsupported. Based on the record before this Court, Petitioner cannot show, but for testimony from these witnesses, the result of his trial would have been different. Therefore, the claim fails under both prongs of Strickland.

### E.  Shatima Turner's Testimony

Petitioner also impliedly asserts that counsel was constitutionally ineffective for failing to ferret out that Shatima Turner testified falsely because she felt she had been romantically rebuked by Petitioner.[6] In this regard, Turner asserts in an affidavit that "[t]he testimony I gave concerning Mr. Barrett conformed to what I felt the government wanted to hear." S. Turner Aff. ¶4.  Turner attests that she testified as did because she had "feelings" for Petitioner and felt "doubly scorned" when he "left 'Choices' to open a restaurant owned by his wife." Turner Aff.  She contends that because of

---

[5](...continued)
Philip Kane; (7) Tracey Corson; (8) Bridget Williams; (9) Michael Youmans; (10) Gordon Greene; (11) Richard Edwards; (12) Collin Jones; (13) Kevin Mickens; (14) Helena McFarlane; (15) Iashia Duncan; (16) Craig Twonbley; (17) Julie Gofkowski; (18) Yolanda Turner; (19) Shatima Turner; (20) Joseph Ashman; (21) Joseph Burke; and (23) Tracy Smith.

[6]  On the instant motion, Petitioner does not allege that Turner's perjured testimony affected the outcome of his trial, see Ortega v. Duncan, 333 F.3d 102, 108 (2d 2003)(Generally, in order to challenge a conviction on the basis of perjured testimony, a petitioner must also show that "the testimony was material and ... but for the perjured testimony, the defendant would most likely not have been convicted."), but rather uses it to buttress and illustrate his ineffective assistance of counsel claim. Perhaps because the Second Circuit has already addressed a similar claim involving the same witness and found it to be without merit, Joyner I, 201 F.3d at 82, Petitioner did not present the same claim on this motion. See United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001)(It is  well settled that a § 2255 motion cannot be used to "relitigate questions which were raised and considered on direct appeal.")(quotation omitted). Further, to the extent Petitioner asserts a due process claim based upon Turner's perjury as outlined in her affidavit, the claim is barred because it was not raised on direct appeal and because Petitoner has not asserted a factual basis for an exception to the general rule barring Section 2255 petitioners from litigating matters not addressed on direct appeal. See  Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998)("Where a criminal defendant has procedurally forfeited his claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the defendant can demonstrate either: (1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence."); see also Massaro v. United States, 123 S. Ct. 1690, 1696 (2003)(A Section 2255 ineffective assistance of counsel claim is not barred even if not raised on direct appeal).

these feelings, she "tried to harm Mr. Barrett in any way, and the trial gave me the opportunity to do so." More specifically, Turner avers that she lied on the witness stand when she testified (1) that "Ms. Gloria" was a courier for Petitioner on occasion, (2) that Jeffery's apartment was used as a "cutting mill," and (3) that the drugs seized from "Mr. Anthony Danes (Haney)" belonged to Petitioner.

The Second Circuit has long been of the view that a recantation of testimony must be "looked upon with the utmost suspicion." Ortega v. Duncan, 333 F.3d 102, 107 (2d 2003)(citations omitted). However, even assuming that Turner is now being truthful, Petitioner's argument fails on both prongs of the Strickland test.

First, assuming *arguendo* that Turner committed perjury for the reasons asserted, there is no indication that anyone, including counsel, was even remotely aware of these motivations at the time of trial. Indeed, Petitioner's proof indicates that Turner revealed her motivations long after the second trial ended. See Turner letter to Petitioner dated 5/6/98. Therefore, it cannot be adjudged that counsel acted in a professionally incompetent manner by failing to explore, and perhaps expose, these motivations and purported perjury. See Strickland, 466 U.S. at 690-91 ("Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

Second, even if counsel's failure to explore these motivations was professionally incompetent, Petitioner fails to establish that the outcome of the trial would have been different had these lies been exposed. As indicated above, there was a wealth of evidence against Petitioner, and even Turner does not contend that her testimony was totally false, but only false in the particulars asserted.  Her perjury in this regard, if it occurred, would not have affected the outcome of this case.

13

See Joyner I, 201 F.3d at 82.  Accordingly, Petitioner's Sixth Amendment claim as related to

Turner's purported perjury fails under both prongs of Strickland.

### F.  Calling Adverse Witnesses

Next, Petitioner alleges that counsel was constitutionally ineffective because he called

witnesses who supposedly contributed more to the Government's case-in-chief than to his defense.

In this regard, Petitioner cites the testimony of defense witnesses Tracy Despersiis and Anne

Sullivan.  Despersiis, a travel agent, testified that Petitioner's wife paid for the vacations the two

took together. Petitioner argues that "although counsel proffered from this witness the fact that

[Petitioner's wife] paid for the tickets, a reasonable jury member could conclude that Barrett merely

gave his wife the money to purchase those tickets, thus proving the fourth element of [the CCE

charge]." Pet. Mem. L. p. 8.  While it is possible that a reasonable juror could have inferred this

from this witness, it was also possible that jurors could have believed this witness and drawn the

inference that Petitioner's wife funded the majority of their expenditures.  Thus, a legitimate

justification existed for calling this witness on behalf of the defense, and the decision to call this

witness amounts to a purely strategic decision by counsel that is not beyond the norm of

professional competence. Further, even assuming, *arguendo,* that it was a professionally

incompetent strategic decision to call this witness, given the weight of evidence pointing decidedly

to Petitioner's guilt, there is no basis to infer that Petitioner would have been absolved of the CCE

charge if the witness had not been called to testify.

The same reasoning applies to the testimony of Anne Sullivan "who testified that the

petitioner opened both a restaurant and a recording studio in Binghamton." Id.  Again, it appears

only logical that counsel called this seemingly unbiased witness in an attempt to demonstrate that

14

Petitioner had legitimate sources of income.  Petitioner's current challenge to the decision does not overcome the presumption afforded such tactical choices, nor does it demonstrate that he would have been cleared of any wrongdoing if Counsel had not called this, or any other, witness.

Accordingly, the Sixth Amendment claim brought on the basis of counsel's decision to call the named witnesses fails under both prongs of Strickland.


### G.  Counsel's Performance Related to the CCE Count

Finally with regard to the ineffective assistance of counsel claims, Petitioner mounts a three-pronged attack. He alleges that counsel was also constitutionally ineffective because counsel: (1) failed to challenge the indictment as facially deficient inasmuch as it did not identify any of the underlying specific drug felony violations; (2) failed to request a jury charge requiring that the government prove every element of the three predicate felonies needed to sustain a CCE; and (3) failed to request a jury charge that would have allowed the jury to convict for either conspiracy or CCE.

Petitioner's first two arguments are based upon Richardson v. United States, 526 U. S. 813 (1999), in which the Supreme Court held that a jury must agree unanimously that a defendant is guilty of each of the specific violations that together constitute the continuing criminal enterprise. Id. at 815.  While the Second Circuit held that the indictment in this case "was deficient under Richardson," Joyner II, 313 F.3d at 48, the Circuit also held that:

> [t]he jury instructions and the verdict sheet ameliorated any prejudice created by the errors in the indictment. ... The jury was instructed that it had to agree unanimously on which three predicate offenses the appellants had committed, and the instructions specifically identified those offenses the jury had to find in order satisfy the first element of a CCE conviction.  We therefore find no cause to reverse the convictions.

15

Id.

Inasmuch as Petitioner suffered no prejudice by either the content of the indictment or the jury charge, Petitioner's claims that counsel was constitutionally deficient for failing to move to dismiss the indictment and/or for failing to request some other jury charge fail under the second prong of Strickland. See Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); United States v. O'Neil, 118 F.3d 65, 72-73 (2d Cir. 1997).[7]

Petitioner's third argument also fails under the second prong of Strickland. That is, assuming arguendo that counsel was constitutionally deficient for failing to realize that the Supreme Court had determined in Rutledge that a § 846 conspiracy is a lesser included offense of § 848 CCE count and request that the jury be charged accordingly, the facts still reveal that Petitioner was found guilty of the greater of the two offenses. Even assuming the jury had been given the option of conviction on either count, the jury still would have been instructed that its verdict could not be based on sympathy and that, if the government proved all of the elements of the CCE count, it would have had to find him guilty of that count. See Rutledge, 517 U.S. at 306 n. 16  ("[B]ecause of our holding today, problems like the one presented in this case are unlikely to arise in the future. A jury is generally instructed not to return a verdict on a lesser included offense once it has found the defendant guilty of the greater offense.").  The Court must presume that the jury would have acted

---

[7] Because Richardson had not been decided at the time of Petitioner's second trial, and because the issue of an attorney's constitutional effectiveness is viewed through the lens of the law as it existed at the time of the challenged conduct, the claims also fail under the first prong of Strickland. See Garcia, 15 F. Supp.2d at 379 ("An attorneys assistance does not fall below an objective standard of reasonableness when he fails to make an argument that conflicts with existing law."); see also Clark v. Moran, 942 F.2d 24, 33 (1st Cir. 1991)(Whether counsel was reasonably effective "cannot and does not include a requirement to make arguments based on a prediction of how the law will develop.") (citations omitted).

lawfully and followed these directions. Therefore, given: (1) that the jury has already determined Petitioner's guilt for both the CCE count and the conspiracy count; (2) that the Second Circuit vacated the conviction on the lesser included offense; and (3) that Petitioner has been re-sentenced accordingly, Petitioner cannot demonstrate any prejudice from counsel's failure to request the alternative charge. See Monsanto v. United States, 348 F.3d 345, 351-52 (2d Cir. 2003)("In [Underwood v. United States, 166 F.3d 84, 87 (2d Cir. 1999)], we stated that, where the [§ 846] conviction does not affect the term of imprisonment, the Rutledge error is 'merely cosmetic' and not prejudicial, and therefore that the claim cannot be raised on habeas review.").  Hence, the claim fails on the second prong of Strickland.

### H. United States v. Booker

Petitioner's argument under United States v. Booker is without legal merit because the Second Circuit has held that the case does not apply retroactively on collateral review. See Guzman v. United States, 404 F.3d 139, 140 ("We now hold that Booker does not apply retroactively to cases on collateral review...."), 144 ("For the reasons stated above, Booker is not retroactive, i.e., it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that Booker issued.") (2d Cir. 2005).  Therefore, any claim based upon Booker v. Washington is dismissed.

### I. Certificate of Appealability

Finally, the Court finds that Petitioner presents no viable issues upon which reasonable jurists could debate whether: (a) the sentence was imposed in violation of the Constitution or laws of the United States; (b) the Court was without jurisdiction to impose such sentence; (c) the sentence was in excess of the maximum authorized by law; or (d) the sentence is otherwise subject

17

to collateral attack.  Therefore, a Certificate of Appealability pursuant to 28 U.S.C. § 2253 is denied.

See Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 1039-1040 (2003); Slack v. McDaniel, 529

U.S. 473, 484 (2000); Barefoot v. Estelle, 463 U.S. 880, 893 (1983).

## III. CONCLUSION

For the foregoing reasons, Petitioner's motion pursuant to 28 U.S.C. § 2255 is **DENIED** and

his petition is **DISMISSED**.  A Certificate of Appealability pursuant to 28 U.S.C. § 2253 is also

**DENIED**.


**IT IS SO ORDERED**.

DATED:   June 27, 2005

Thomas J. McAvoy
Senior, U.S. District Judge

18